UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATIRIA IVETTE GONZALEZ,

                Plaintiff,                      **Hon. Hugh B. Scott**

                      v.                                   **6:18CV6268**

                                                   **CONSENT**

ANDREW SAUL, COMMISSIONER,                    **Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 13 (plaintiff), 16 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 9 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 18, reassignment Order, July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Katiria Gonzalez" or "plaintiff") filed an application for disability insurance benefits on November 14, 2011, for an onset date of August 12, 2010 [R. 8, 432]. That application was denied initially. The plaintiff appeared before an Administrative Law

Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated January 25, 2014, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 8, 432]. On February 13, 2015, the Appeals Council denied plaintiff's request for review [R. 1, 444].

Plaintiff sought judicial review of the agency's denial [R. 447], Gonzalez v. Colvin, No. 15CV6216F. On September 30, 2016, this Court remanded to further evaluate the opinion of school psychologist Gary Kleiman [R. 372, 278, 491-98], Gonzalez v. Colvin, No. 15CV6216, 2016 U.S. Dist. LEXIS 136000, at *23-31, Docket No. 17, Order of Sept. 30, 2016. The Appeals Council remanded [R. 501]. The ALJ held another hearing on November 20, 2017 [R. 378]. The ALJ on January 17, 2018, again found that plaintiff was not disabled [R. 372]. The ALJ's decision became the final decision of the Commissioner (see Docket No. 16, Def. Memo. at 2).

Plaintiff commenced this action on April 3, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 16), and plaintiff duly replied (Docket No. 17). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 19-year-old with an eleventh-grade education when she applied, and did not engage in substantial gainful activity [R. 14, 381, 144], although she worked for 16 hours a week as a pizza maker [R. 359, 401-02] and part-time at Target [R. 620-53, 394-98, 399, 401] (Docket No. 14, Pl. Memo. at 6). She left school in the twelfth grade [R. 406] (id.). Plaintiff contends that she was disabled as of the onset date of August 12, 2010 [R. 8, 432]. Plaintiff claims the

2

following impairments deemed severe by the ALJ: learning disorder and borderline intellectual functioning [R. 10, 375].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims that her ability to work was limited by her learning disability, specifically her difficulty with math, reading, and writing [R. 473]. On January 30, 2012, school psychologist Gary Kleiman evaluated plaintiff [R. 279, 378, 474], Gonzalez, supra, 2016 U.S. Dist. LEXIS 136000, at *3-4. At that time, plaintiff was enrolled in a special learning class and continued to struggle academically [R. 279, 474], id. at *4. Kleiman found that plaintiff was functioning within the overall borderline range of intellectual development and activities [R. 281, 474-75], id. He noted that plaintiff's working memory and processing skills were significantly impaired; she required ample time to process new information and had significant difficulty retaining new information [R. 282, 475], id. Plaintiff required extensive repetition to remember information and had difficulty expressing newly learned material [R. 282, 475], id. Plaintiff's academic skills were very low, particularly in math [R. 282, 475], id. Kleiman remarked that plaintiff would likely only graduate high school with an IEP diploma and recommended extensive accommodations [R. 283, 475], id. Kleiman opined that plaintiff had very significant difficulties with her working memory and expressive language skills [R. 283, 475], id. He also concluded that plaintiff, who hoped to become a pediatrician, would be better suited pursuing a career in child care [R. 283, 475], id.

The ALJ on remand further evaluated Kleiman's findings [R. 372, 378-79], noting that plaintiff had an IQ score of 77, performance IQ of 79, and verbal IQ of 79, "indicating function within the overall borderline ranger (upper end) of intellectual development" [R. 378]. Test

scores "indicated cognitive functioning at the fourth and fifth grade levels in the areas of reading, math, and spelling" [R. 373]. The ALJ noted this report contained contradictory statements, with Kleiman stating that plaintiff's "attention to task was good, but she struggled at times with concentration, especially on tasks that require much retention of information" [R. 378, 280]. The ALJ noted that, during testing, plaintiff "was able to work diligently and with sustained effort" [R. 378]. Plaintiff was able to follow clear oral and written procedures but would also require "'extensive repetition, as well as information given in a more concrete manner to check understanding of the material'" [R. 378, 283]. Kleiman opined that plaintiff "had significant difficulties with her working memory and expressive language skills. He concluded the claimant was suited to pursuing a career in child care and recommended ACCESS vocational training" [R. 378, 283]. The ALJ found that psychologists are acceptable medical sources but considered Kleiman was not a treating source and only examined plaintiff "for the purposes of identifying recommendations for her educational setting" [R. 378]. The ALJ thus gave Kleiman's report partial weight because that report is more restrictive than other evidence in the record, including plaintiff's own statement of her daily activities [R. 378]. The ALJ accepted Kleiman's report about plaintiff's delayed of information and following multi-step instructions which were supported by the record [R. 378]. The ALJ reiterated the Kleiman found plaintiff's career goal of a pediatrician was not appropriate but Kleiman did not conclude that plaintiff was incapable of all work [R. 378, 283].

Meanwhile, in August 2012, plaintiff was evaluated by consultative psychologist, Dr. Christine Ransom, Ph.D. [R. 359, 379, 13]. Dr. Ransom found that plaintiff's intellectual functioning appeared to be in the borderline range with her fund of information was "somewhat

limited" [R. 361]. Dr. Ransom noted that plaintiff could dress, bathe, and groom herself, cook and prepare food, clean, launder, and shop, but could not manage money, and she receives assistance from her mother-in-law and boyfriend [R. 361]. Plaintiff never learned to drive due to her learning disability [R. 361]. Dr. Ransom concluded that plaintiff could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. She would have mild difficulty performing complex tasks" [R. 361]. Dr. Ransom also found that plaintiff could relate adequately with others and appropriately deal with stress [R. 361]. Dr. Ransom's evaluation was "consistent with the claimant's allegations" [R. 361]. She concluded that plaintiff was capable of performing simple work [R. 361, 379]. The ALJ gave "significant weight" to Dr. Ransom's opinion since her opinion was deemed to be consistent with intelligence testing performed in connection with the individual educational plan, plaintiff's ability to perform activities of daily living [R. 379].

State psychological consultant, Dr. Edward Kamin, also found that plaintiff was capable of performing simple work [R. 48, 379, 13], adopting Dr. Ransom's opinion [R. 50]. The ALJ gave this opinion only partial weight since Dr. Kamin did not have all of the medical evidence available at the hearing [R. 379].

Upon reviewing the entire record, the ALJ found that plaintiff's impairments "could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" [R. 379, 14]. The ALJ accepted these statements only insofar at they were consistent with that record [R. 379].

5

The ALJ found that plaintiff had a residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitation to work requiring no more than reasoning level one ability [R. 377]. With this capacity, the second vocational expert opined that a hypothetical claimant like plaintiff with this residual functional capacity assessment was able to perform such occupations as lens inserter, gluer, or cleaner/housekeeper, all sedentary exertion level and unskilled occupations [R. 382]. The expert also testified that if that claimant were off task 20% of the day, then that claimant could not find employment [R. 425-26] (Docket No. 14, Pl. Memo. at 7, 11-12). As a result, the ALJ again held that plaintiff was not disabled [R. 382].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

6

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

7

1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. The issue here is reduced to the ALJ's consideration of school psychologist Kleiman. Plaintiff argues that the ALJ erred in discounting Kleiman's opinion (Docket No. 14, Pl. Memo. at 7-12). She disputes whether Kleiman's opinion was contradictory as to attention and concentration, noting that Social Security regulations deem these to be two separate items (id. at 9-10). Defendant counters that the ALJ properly considered Kleiman's report (Docket No. 16, Def. Memo. at 11-15). Defendant further notes that plaintiff was advised later to contact VESID for career assistance but plaintiff did not

8

follow up (id. at 3 n.11; [R. 30-31]).   Defendant points to the opinions of consulting psychologist Dr. Christine Ransom [R. 359] and initial evaluator, Dr. Edward Kamin [R. 48], who opined that plaintiff is able to perform simple tasks despite her learning disability (id. at 12-14, 2-4).

Upon remand, the ALJ was to evaluate Kleiman's opinion, which the ALJ has done. The purpose of Kleiman's opinion was to establish the appropriate level of special education services for plaintiff for her senior year [R. 279].   Putting to one side the ALJ's consideration of plaintiff's part-time work as rebutting Kleiman's opinion (cf. [R. 380]; Docket No. 16, Def. Memo. at 13), the examining and non-examining consultative psychologists found that plaintiff was capable of performing simple tasks.   Kleiman and the consultative psychologists agree that plaintiff is capable of performing simple tasks [R. 283, 361, 50] that the ALJ incorporated into the residual functional capacity assessment that plaintiff is limited to no more reasoning level one ability [R. 377].   Thus, plaintiff's motion for judgment (Docket No. 14) is **denied** and defendant Commissioner's motion for judgment (Docket No. 16) is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 14) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 16) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 18, 2019